UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.D., a minor, by and through his Guardian ad Litem, LAQUANTAE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>CALIBER CHANGEMAKERS, et al.,<br><br>    Defendants. | No. 2:23-cv-00083-DJC-JDP<br><br>ORDER |

Plaintiff K.D., a minor, by and through his mother, LaQuantae Davis, as his guardian *ad litem*, filed this action against certain Defendants alleging he was bullied, threatened, sexually abused, and sexually assaulted by other students while enrolled in the fourth grade at Caliber ChangeMakers Academy. The parties reached a settlement agreement, and Plaintiff filed a Motion to Approve Settlement of Minor's Claims (ECF No. 105), which is unopposed by any party. For the reasons set forth below, the Motion is granted in part.

////

////

////

1

## BACKGROUND

Plaintiff K.D. was born on July 20, 2012, to his mother, LaQuantae Davis. (First Amended Compl. ("FAC") (ECF No. 22) ¶ 16.) Plaintiff was diagnosed with a disability, including Speech and Language Impairment, which qualified him for special education services. (*Id.* ¶ 5.) At the time of the alleged events, Plaintiff was a fourth-grade student at Caliber ChangeMakers Academy ("CCA"), a public charter school operating under the authority of Caliber Public Schools and the oversight of Vallejo Unified School District. (*Id.* ¶¶ 6, 18.) Rachael Weingarten was CCA's Head of Schools and Aisha Ford was CCA's principal. (*Id.* ¶¶ 10–11.) During the 2021–2022 school year, Plaintiff was allegedly bullied, threatened, sexually abused, and sexually assaulted by student K.J.W. and other students on the CCA campus during school hours. (*Id.* ¶¶ 25, 31.) According to the FAC, the students harassed and teased Plaintiff about his speech impediment, stole his backpack, chased him into the bathrooms, and made fun of his disabilities. (*Id.* ¶ 26.) Student K.J.W. also allegedly fondled Plaintiff's genitals, forced a pencil and his fingers into Plaintiff's buttocks and squeezed Plaintiff's penis. (*Id.* ¶ 29.) Plaintiff alleges that Defendants knew he was more likely to be targeted by virtue of his disabilities and more vulnerable to suffering detrimental effects. (*Id.* ¶ 28.) As a result of the alleged abuse, Plaintiff purportedly sustained severe emotional distress, psychological injuries, severe anxiety, depression and emotional trauma, among other injuries. (*Id.* ¶ 40.) Plaintiff's family has allegedly observed acute and significant changes in Plaintiff's behaviors including frequent flash backs at school, intense feelings of self-harm, suicidal ideation, and loss of interest in activities he previously enjoyed. (*Id.* ¶ 41.)

Plaintiff initiated this action on January 13, 2023. (ECF No. 1.) In the FAC, Plaintiff named CCA, Rachael Weingarten, Aisha Ford, Caliber Public Schools, Vallejo City Unified School District, and Does 1–50 as Defendants. (*See generally* FAC.) Vallejo City Unified School District was dismissed from the action on December 9, 2024. (ECF No. 78.) After prolonged litigation, Plaintiff filed a notice of settlement on

August 4, 2025. (ECF No. 101.) On September 23, 2025, Plaintiff filed a Motion to Approve Settlement of Minor's Claims. (Mot. (ECF No. 105).) Following the parties' joint stipulation, the Court took the matter under submission pursuant to Local Rule 230(g). (ECF Nos. 107–08.)

## LEGAL STANDARD

No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise. E.D. Cal. R. 202(b). The Local Rules require that the motion for approval of a proposed minor's compromise disclose, among other things: (1) the age and sex of the minor, (2) the nature of the causes of action to be settled or compromised, (3) the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, (4) the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise amount, and (5) if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. *See* E.D. Cal. R. 202(b)(2).

Furthermore, the Ninth Circuit held in *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) that Federal Rule of Civil Procedure 17(c) imposes a "special duty" on district courts approving a minor's compromise. "[T]his special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (citations omitted). However, this "special duty" has a limited scope of review, asking only "whether the net amount distributed to each minor plaintiff is fair and reasonable . . . without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel." *Id.* at 1182. "If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as presented[] . . . ." *Id.* In making this determination, "courts typically consider such information as the

relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." *Rivett v. United States*, No. 2:21-CV-00717-DAD-AC, 2023 WL 4238909, at *2 (E.D. Cal. June 28, 2023) (collecting cases where the procedural posture was considered, the fact that the settlement occurred at a court-supervised settlement conference was considered, and other compromises were considered).

Plaintiff asserts a variety of state and federal law claims against Defendants. Although the Ninth Circuit expressly limited its holding to "cases involving the settlement of a minor's federal claims[,]" *Robidoux*, 638 F.3d at 1179 n.2, where, as here, a court is exercising supplemental jurisdiction over state law claims, courts will apply the *Robidoux* standard to all of the claims, *see Calderon v. United States*, No. 1:17-cv-00040-BAM, 2020 WL 3293066, at *3 (E.D. Cal. Jun. 18, 2020) (collecting cases).

## DISCUSSION

### I. Proposed Settlement

The parties intend that the proposed settlement will resolve and dismiss with prejudice all claims brought by Plaintiff against Defendants CCA, Rachael Weingarten, Aisha Ford, and Caliber Public Schools. (Prop. Order (ECF No. 105-1) ¶ 5.) In August 2025, the parties reached a tentative settlement amount of $1,500,000. (Mot. ¶ 3.) CCA agrees to make the payment as follows:

1. A cash payment of $753,254.18 to Plaintiff, his mother, and Plaintiff's counsel in the following amounts:
    a. $140,286.27 for costs advanced by Plaintiff's counsel;
    b. $453,237.91 for attorneys' fees;
    c. $130,000 to fund a designated special needs trust, Legacy Enhancement Minor's Master Pooled Trust ("Trust"), for Plaintiff's benefit; and

       d. $30,000 to Plaintiff's mother, LaQuantae Davis, acting as guardian *ad litem*.

2. A check in the amount of $746,745.82 to the Trustee of the Trust to fund the purchase of a structured settlement annuity by United of Omaha Life Insurance Company for Plaintiff's benefit. The annuity funds will be paid into the Trust pursuant to a specified payment schedule:

       a. $1,000 payable monthly, guaranteed for 4 years, beginning on February 1, 2026, with the last guaranteed payment on January 1, 2030;

       b. $40,000 payable annually beginning on July 20, 2030, with the last guaranteed payment on July 20, 2033;

       c. $1,500 payable monthly, guaranteed for 7 years, beginning on July 20, 2030, increasing at a rate of 3% compounded annually, with the last guaranteed payment on June 20, 2037;

       d. $75,000 lump sum payment on July 20, 2035;

       e. $125,000 lump sum payment on July 20, 2037;

       f. $150,000 lump sum payment on July 20, 2039;

       g. $655,739.35 lump sum payment on July 20, 2042.

The Court notes that that the correct sum of the four subcategories for the cash payment is $753,524.18, and not $753,254.18 as listed in the Motion. However, the incorrect amount of $753,254.18, plus the amount of $746,745.82, equals $1.5 million, which is the total amount of the settlement. The Court will require that the Plaintiff file a supplemental brief providing the correct amount prior to final approval.

**A. Adequacy of Amount Distributed to Minor Plaintiff K.D.**

The Motion provides some of the disclosures required by Local Rule 202(b)(2). The Motion indicates the age and sex of the minor, as well as the nature of the cause of action settled and the facts and circumstances surrounding it. (*See generally* Mot.) However, the Motion does not provide sufficient information explaining how the

5

compromise amount was reached nor provide any cases showing comparable recovery amounts.

The Court is required to consider the outcome of similar cases to determine whether the sum to settle the minor's claim is reasonable. *Robidoux*, 638 F.3d at 1181. The Ninth Circuit's holding in *Robidoux* is "limited to cases involving the settlement of a minor's federal claims." *Id.* at 1179 n.2. Where, as here, a settlement also involves state law claims, "federal courts are generally guided by state law." *J.T. v. Tehachapi Unified Sch. Dist.*, No. 1:16-cv-01492-DAD-JLT, 2016 WL 11812476, at *2 (E.D. Cal. Feb. 27, 2019). Under California law, a minor's compromise of state law claims requires the court to "evaluate the reasonableness of the settlement and determine whether the compromise is in the best interests of the minor." *A.M.L. v. Cernaianu*, No. 2:12-cv-06082-JAK-RZ, 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014); *see* Cal. Code Civ. Proc. § 372(a)(3) ("The guardian or conservator of the estate or guardian ad litem so appearing for any minor, person who lacks legal capacity to make decisions, or person for whom a conservator has been appointed shall have power, with the approval of the court in which the action or proceeding is pending, to compromise the same . . . .")

The Court has conducted its own independent research and finds a wide range of settlements and/or comparable jury verdicts in California and federal courts. *See, e.g.*, *M.W. v. Panama Buena Vista Union Sch. Dist.*, 110 Cal. App. 4th 408, 524–25 (2003) (affirming jury verdict of $2.3 million for minor special needs plaintiff who was sodomized by another student in a school bathroom); *J.R. by and through Ringer v. Lakeport Unified Sch. Dist.*, No. 3:18-cv-06211-WHA, 2019 WL 6219034, at *2–4 (N.D. Cal. Nov. 21, 2019) (approving $81,939.62 and $18,209.43 in minor's compromise regarding sexual assault claims by another student because of "significant risk" of zero recovery against school district); *Botello v. Morgan Hill Unified Sch. Dist.*, No. 5:09-cv-02121-HRL, 2011 WL 5313965, at *2 (N.D. Cal. Jun. 6, 2011) (approving $11,500 to settle minor's claims regarding sexual and physical assault by another student). Here,

after deducting attorney's fees, costs, and the amount set aside for Plaintiff's mother, the net recovery amount for Plaintiff is $876,745.82, which exceeds these representative examples, but is significantly less than that awarded by a jury in a similar case. The Motion describes the extensive litigation that occurred between the parties and acknowledges that it "would be a difficult and complicated case to prove," given that Plaintiff's abuser was another child, and the abuse occurred without adult supervision. (Mot. ¶ 20.) On balance, given the risks inherent in litigation and the underlying alleged facts, the Court concludes the net recovery amount is sufficient for plaintiff's needs.

The terms of the settlement also provide for $30,000 in cash to be distributed to Plaintiff's mother and guardian *ad litem*, LaQuantae Davis, to reimburse her for the care she provided Plaintiff following the alleged abuse, or, alternatively, to the Trust. (Mot. ¶¶ 7–11.) The Motion asserts that Plaintiff's mother lost approximately $68,000 in income when she needed to stay home and care for Plaintiff, but that she is requesting less than half that amount—$30,000—as reimbursement. (*Id.* ¶ 10.) The Motion also indicates that such payment would be "in the best interest of the minor." (Mot. ¶ 11 n.1.) California law requires a structured settlement annuity or some similar locked-in, fixed-term investment vehicle for settlements for minors that exceed $5,000. *See* Cal. Prob. Code § 3401(c)(2); Cal. Prob. Code § 3611; *Williams v. Cnty. of Monterey*, No. 19-cv-01811-BLF, 2020 WL 7342737, at *1 (N.D. Cal. Dec. 14, 2020) (noting that "district courts within the Ninth Circuit commonly order than such funds be deposited into a blocked account for the minor's benefit." (collecting cases)). However, given that the funds are to be paid to the Plaintiff's mother to reimburse her, the funds appear to be for the parent's benefit. Under *Robidoux*, "parental awards ultimately are irrelevant to the court's fairness evaluation as to [the] minor." *T.V. v. Sacramento City Unified Sch. Dist.*, No. 2:15-cv-0889-KJM-AC, 2018 WL 3869171, at *3 (E.D. Cal. Aug. 15, 2018).

////

The Motion also provides information about the requested attorney's fees and costs, however, the Court is bound to consider only the net recovery of the minor in assessing whether the settlement is fair and reasonable. *See Robidoux*, 638 F.3d 1182. Under that criterion, the Court finds the net recovery for Plaintiff to be fair and reasonable.

### B. Method of Disbursement

The settlement funds will be distributed via a cash payment and scheduled payments into a special needs trust pursuant to an annuity as explained above.

#### 1. Required Findings Under Probate Code § 3604(b)

The proposed settlement seeks to establish a special needs trust ("Trust") with "Legacy Enhancement Master Pooled Trust, Inc.," a not-for-profit corporation created pursuant to a federal statute, 42 U.S.C. § 1396p(d)(4)(C), for the purpose of benefitting individuals with disabilities. (Mot. ¶ 16.) Under the California Probate Code, a special needs trust may be created if the court determines:

1. That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
2. That the minor or person with a disability is likely to have special needs that will not be met without the trust.
3. That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Prob. Code § 3604(b)(1)–(3). These requirements are met in this case. The record reflects that Plaintiff has a qualifying disability for special education services and that, following the alleged events, his "mental health deteriorated," he is "incapable of being alone due to his suicidal ideation and mental health crises," and his mother missed potential work for "428 days" in order to care for her child. (Mot. ¶¶ 7–8.) Because Plaintiff's "most permanent injuries . . . are psychological and emotional, the

settlement will provide for his continued treatment and care." (*Id.* ¶ 21.) The Trust Agreement explains that the Trustee may make distributions "for medical, educational, or other personal needs identified by the Trustee." (Trust (ECF No. 105) at 2.)[1]  Because it appears these needs will persist through Plaintiff's lifetime and will not be met without the Trust, the Court concludes the settlement proceeds will not exceed the amount reasonably necessary to meet Plaintiff's special needs and that the proposed Trust complies with section 3604(b) of the Probate Code.

In summary, the Trust will assist in remediating the harms alleged in the FAC. *See McGee v. State Dep't of Health Care Servs.*, 91 Cal. App. 5th 1161, 1171 (2023) (distinguishing special needs from basic needs and explaining that a special needs trust "encompasses the very broad range of everything else a human being needs in order to live, thrive, and realize his or her potential in life"). The Court is also satisfied with the terms of the proposed annuity, which will ensure funds are regularly distributed to Plaintiff.

**ORDER**

For the reasons explained above, the Motion (ECF No. 105) is GRANTED IN PART. Counsel should submit a new proposed order with an updated accounting of the settlement funds as noted in this Order (see p. 5), at which time the Court anticipates approving the request in full.

IT IS SO ORDERED.

Dated: **October 14, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8 – 23cv00083.KD.mot.approveminor'scompromise

---

[1] Because the Motion and Trust Agreement are part of the same filing (ECF No. 105), the Court cites to the Motion by its internal paragraphs and the Trust Agreement by its internal pages.